IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CV-553-M-BM

| | | |
|---|---|---|
| MELISSA ROCHELLE BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| FRANK J. BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Melissa Rochelle Baker ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). This matter is before the court on Plaintiff's brief [DE-8] ("Pl.'s brief") seeking judgment in her favor, Defendant's responsive brief [DE-10] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-11] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The briefs were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1). Having reviewed and considered the record, the administrative transcript, the briefs the parties submitted, and the applicable law, it is recommended that Plaintiff's brief [DE-8] be ALLOWED, Defendant's brief [DE-10] be DENED, and the decision of the Commissioner be REMANDED.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on January 7, 2022, alleging disability beginning July 2, 2021. Transcript of Proceedings ("Tr.") 96, 233-39.

Her claim was denied initially.  Tr. 88-96, 110-14.  Plaintiff filed a request for reconsideration (Tr. 121) and was denied upon reconsideration on September 30, 2022 (Tr. 97-109, 122-26).  On October 21, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ").  Tr. 128-29.  A hearing before the ALJ was held on May 1, 2023, at which Plaintiff, represented by an attorney, and a vocational expert ("VE") appeared and testified.  Tr. 47-87.  On August 11, 2023, the ALJ issued a decision denying Plaintiff's request for benefits.  Tr. 7-27.

On September 26, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council.  Tr. 230-32.  On November 20, 2023, the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.  Plaintiff then filed a complaint in this court seeking appellate review of the now-final administrative decision.

## II.  STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"],"
> *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or
> exceeds [in severity] the "listings" of specified impairments, or is otherwise
> incapacitating to the extent that the claimant does not possess the residual
> functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

"If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with

3

the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into her written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 22. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since July 2, 2021, the alleged onset date. Tr. 12.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: mild degenerative changes and disc bulge in lumbar spine; plantar fascial fibromatosis, right foot; bilateral maxillary sinus disease; tinnitus; primary insomnia; migraine; obesity; mild sloping to moderately severe sensorineural hearing loss in the right ear; mild to moderate sensorineural hearing loss over 3000hz in the left ear; anxiety; and depression. Tr. 12. The ALJ also found Plaintiff had the following non-severe impairments: left knee ACL tear; Hashimoto's; hyperlipidemia; keratoconjunctivitis sicca; and dry eye symptoms. Tr. 13. At step three, the ALJ concluded these impairments, both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 13.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental

4

impairments have resulted in mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. Tr. 14.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform light work[1] with the following limitations:

> [S]he must be able to alternate position for 1-2 minutes after every one hour of work activity. She can frequently climb, balance, stoop, kneel, crouch, and crawl. She can occasionally work around unprotected heights, moving mechanical parts, and dust, odors, fumes, and other pulmonary irritants. She is limited to work environments with a maximum noise level of "moderate" as that term is defined in the SCO. She can understand, remember, and carry out simple tasks and can use judgment to make simple, work-related decisions. She can tolerate frequent interaction with supervisors and only occasional interaction with coworkers and the general public. She can tolerate occasional changes to the simple work described herein.

Tr. 15.

At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work as a warehouse manager or phlebotomist. Tr. 20. Even so, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff is capable of making an adjustment to other work that exists in significant numbers in the

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id.* A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

national economy.  Tr. 21-22.

## V.  OVERVIEW OF PLAINTIFF'S CLAIMS

In this case, Plaintiff alleges that the ALJ erred: (1) by failing to provide an RFC limitation to accommodate Plaintiff's moderate limitation in concentration, persistence, and pace; (2) by failing to properly account for Plaintiff's level of work absenteeism or explain why no such limitation is warranted by the evidence; (3) by failing to include a limitation to a quiet work environment or explain why that limitation was not given in the RFC; and (4) in her analysis of the opinion of consultative psychological examiner, C. Craig Farmer, Ph.D. ("Dr. Farmer").  [DE-8] at 15-21.  Each will be discussed below.

## VI.  DISCUSSION

### A.    Plaintiff's limitations in concentration, persistence, and pace

Plaintiff argues the ALJ erred by failing to provide limitations in the RFC to accommodate Plaintiff's moderate limitation in concentration, persistence, and pace.  Pl.'s Brief [DE-8] at 15.  Defendant argues that "substantial evidence supports the ALJ's findings with respect to mental limitations," and specifically that "Plaintiff does not point to any evidence that the ALJ allegedly overlooked or mischaracterized."  Def.'s Brief [DE-10].  Specifically, Plaintiff contends that the ALJ erred by addressing Plaintiff's moderate limitation in concentration, persistence, and pace by limiting Plaintiff to the following mental limitations in the RFC: "[s]he can understand, remember, and carry out simple tasks and can use judgment to make simple, work-related decisions[,] . . .she can tolerate frequent interaction with supervisors and only occasional interaction with coworkers and the general public[, and] she can tolerate occasional changes to the simple work described herein."  Pl.'s Brief [DE-8] at 15-16 (citing Tr. 15).

6

Plaintiff notes her testimony that, due to her anxiety, she would frequently take unscheduled breaks to use the restroom and was told by her supervisor she worked "too slow" because her anxiety caused her to constantly recheck her work. *Id.* at 16 (citing Tr. 56-59).

"Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Cherry v. Colvin*, No. 7:15-cv-105-D, 2016 U.S. Dist. LEXIS 62878, at *10 (E.D.N.C. Apr. 20, 2016) (quoting Listing 12.00(C)(3)), *adopted by* 2016 U.S. Dist. LEXIS 62876 (E.D.N.C. May 12, 2016). In *Mascio*, the Fourth Circuit held "that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). Specifically, the court found that "the ability to perform simple tasks differs from the ability to stay on task[,]" and "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Yet the Fourth Circuit does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Instead, the Fourth Circuit notes "that 'an ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Id.* (quoting *Mascio*, 780 F.3d at 638) (alteration in original). "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.*

7

(alterations in original) (citations omitted). Yet, without such explanation by the ALJ, remand is required. *Williams v. Saul*, No. 4:20-CV-92-FL, 2021 WL 3399820, at *4 (E.D.N.C. June 16, 2021) (citing *Mascio*, 780 F.3d at 638); *see also Shannon R. v. Kijakazi*, 2022 WL 636638, at *9–10 (W.D. Va. Mar. 4, 2022) (finding that the ALJ "was required either to include specific work-related restrictions within her RFC finding to accommodate for such 'moderate' CPP limits, or to explain why such limits did not translate into [the claimant's] RFC."); and *Linda W. v. Saul*, No. 7:20-cv-27, 2021 WL 930274, at *4–6 (W.D. Va. Feb. 22, 2021) ("[T]he ALJ failed to draw an explicit conclusion or satisfactorily explain how [the claimant's] [moderate limitations in maintaining CPP] affect her ability to perform job-related tasks for a full eight-hour workday.").

Here, when discussing Plaintiff's moderate limitations in the ability to maintain concentration, persistence and pace, the ALJ (i) notes that "[t]he record does not suggest that the claimant has difficulty in this area when pursuing tasks she enjoys" and (ii) cites Dr. Farmer's findings that "[Plaintiff's] ability to sustain attention to perform simple tasks is within normal limits." Tr. 14 (citing Tr. 516).

The undersigned does not give particular weight to the finding that Plaintiff can concentrate on tasks she enjoys, because the ALJ provides no evidence that Plaintiff would enjoy the occupations, which the ALJ cited at step five of the sequential evaluation process.

At the same time, Dr. Farmer's findings regarding Plaintiff's ability to sustain attention to perform simple tasks contributes evidence toward a finding that Plaintiff could maintain concentration sufficient to complete a standard workday with the RFC provided by the ALJ. The ALJ also found generally persuasive the opinion of the State Agency psychologist at the initial determination level that "claimant can sustain attention and concentration for simple tasks and

8

maintain effort for two-hour periods with acceptable pace and persistence." Tr. 20. Other courts in this circuit have noted that under Social Security Regulation ("S.S.R.") 96-9p, "customary breaks during a work-day . . . occur approximately every two hours" consisting of "a morning break, a lunch period, and an afternoon break." *Hawley v. Astrue*, No. 1:09CV246, 2012 WL 1268475, at *7 (M.D.N.C. Apr. 16, 2012) (quoting *Perkins v. Astrue*, No. EDCV–08–1383–OP, 2010 WL 375117, at *6–7 (C.D. Cal. Jan. 25, 2010)), *report and recommendation adopted*, 2012 WL 3584340 (M.D.N.C. Aug. 20, 2012); *Del Vecchio v. Colvin*, No. 1:14CV116, 2015 WL 5023857, at *5 (W.D.N.C. Aug. 25, 2015). One of these courts additionally found that the ALJ's reliance on a medical consultant's finding that the claimant could "complete simple, 1–to 2–step tasks for periods of at least [two] hours, without the need for . . . extra rest periods" supported the ALJ's finding that the claimant would "be able to stay on task throughout an 8–hour workday, even with moderate limitations in concentration, persistence, or pace." *Del Vecchio*, 2015 WL 5023857, at *5. Accordingly, the undersigned finds that the opinion of the State Agency psychologist at the initial determination level contributes evidence towards the ALJ's RFC sufficiently accommodating Plaintiff's ability to maintain concentration, persistence, and pace. With respect to a limitation to specifically accommodate Plaintiff's ability to stay on task, the ALJ notes that the "medical evidence of record does not support being off task or absent excessively due to symptoms." Tr. 19.

Plaintiff alleges that when she became overwhelmed as a phlebotomist, she "found herself checking and rechecking everything" and would take an unscheduled break to go to the restroom, which occurred two to three times per shift and could last up to 15 minutes each time. Tr. 58-59. Yet the ALJ accommodated the complexity of taking another person's blood by limiting Plaintiff

to "simple tasks and . . . simple, work-related decisions," as well as "only occasional interaction with coworkers and the general public" in the current RFC. Tr. 15. The VE expressly found that Plaintiff could not perform her previous occupation as a phlebotomist due to the limitation to simple tasks. *See* Tr. 78 ("[T]he simple would rule out the semiskilled and skilled occupations she performed."). While Plaintiff argues in her reply that her anxiety led her to "second guess[] even simple tasks such as wiping the patient's arm before drawing blood" (Pl.'s Reply [DE-11] at 2), this action was necessary in the larger context of drawing blood from a live human being, which is a more complex environment than the jobs cited by the ALJ (*see* Tr. 22).

The ALJ highlights the connection between Plaintiff's anxiety and her moderate limitation in concentration, persistence, and pace. Specifically, the ALJ finds that Plaintiff's "*anxiety* would limit her to maintaining attention and concentration to complete simple tasks, limited interaction w/coworkers, and occasional changes to simple work." Tr. 19 (emphasis added). The ALJ concludes that "[t]he medical evidence of record does not support being off task or absent excessively due to symptoms." *Id.*

Accordingly, the undersigned finds the instant case to represent the circumstances contemplated in *Shinaberry*, where the ALJ adequately explains why Plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a [greater] limitation' in the [Plaintiff's] RFC." 952 F.3d at 121 (quoting *Mascio*, 780 F.3d at 638). The undersigned does not recommend remand on this issue.

## B. Plaintiff's work absenteeism

Plaintiff argues the ALJ erred in not properly accounting for Plaintiff's level of work absenteeism and failing to explain why no such limitation is warranted by the evidence. Pl.'s Brief

[DE-8] at 17.  Plaintiff points to evidence in the record, including her own testimony, demonstrating that she has historically attended more than two medical appointments per month during normal business hours.  Pl.'s Brief [DE-8] at 17.  At the administrative hearing before the ALJ, Plaintiff confirmed her counsel's question that had she "been working [all the days of her numerous medical appointment] . . . [she] would have had to be absent or tardy or leave early from work."  Tr. 76.

Plaintiff also points to her testimony that "approximately three days per month, her anxiety levels were so severe that she would drive to work but would be so 'paralyzed' by anxiety that she would not be able to get out of her car and would call in sick to work for the day."  Pl.'s Brief [DE-8] at 18.  Plaintiff argues "the issue of absenteeism is outcome determinative" because the vocational expert "testified that absences of two or more days per month on an ongoing basis would be work preclusive."  Pl.'s Brief [DE-8] at 18.

Defendant focuses its absenteeism arguments on Plaintiff's absenteeism due to medical appointments, which will be discussed in greater detail below.

### 1.    Absenteeism due to medical appointments

Under S.S.R. 96-8p, an ALJ should consider the relevant evidence in the record, including "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (*e.g.*, frequency of treatment, duration, disruption of routine, side effects of medication)."  *See* S.S.R. 96-8p, 1996 WL 374184, at *5.

Plaintiff's alleged onset date is July 2, 2021.  Tr. 96.  From that date through April 30, 2023, the last full month before her administrative hearing on May 1, 2023, there was only one month that Plaintiff did not have any medical appointments, September 2021, and only two months

11

where Plaintiff had only one medical appointment, April 2022 (Tr. 513-16, 681)[2] and December 2022 (Tr. 903). Among the remaining months, which had two or more days with medical appointments, these included nine months that had four or more medical appointments. *see* July 2021 (Tr. 399, 443, 395, 464), October 2021 (Tr. 456, 501, 453, 450, 487), November 2021 (Tr. 1009, 1006, 507, 489, 497), January 2022 (Tr. 491, 1002, 366, 689), March 2022 (Tr. 558, 564, 992, 994, 997, 1000), June 2022 (Tr. 528, 570, 669, 800, 803), November 2022 (Tr. 840, 844, 866, 901, 919), February 2023 (Tr. 905, 940, 939, 1048), March 2023 (Tr. 935, 934, 1065, 1085), April 2023 (Tr. 1123, 1128, 1150, 1160).

When considering Plaintiff's medical history, the ALJ noted that Plaintiff "has been able to keep multiple medical appointments." Tr. 14. While the ALJ provides a longitudinal summary of Plaintiff's medical history (Tr. 17-19), she does not separately discuss the frequency of Plaintiff's medical care. Yet the ALJ later finds that "[t]he medical evidence of record does not support being off task or absent excessively due to symptoms." Tr. 19. The ALJ does not otherwise discuss how the high frequency of Plaintiff's medical appointments would reconcile with the VE's testimony that missing "two days per month [or more] on an ongoing basis would preclude competitive work." Tr. 81.

Plaintiff cites *Dennis v. Kijakazi* as an example where the Fourth Circuit remanded an ALJ's decision because the ALJ failed to address a claimant's absenteeism. Pl.'s Brief [DE-8] at 18 (citing No. 21-2078, 2023 U.S. App. LEXIS 8976 (4th Cir. Apr. 14, 2023)). In that case, the Fourth Circuit held that "[t]here is evidence supporting [the claimant's] need to miss work in the administrative record, and the ALJ's decision does not discuss this evidence, nor does the ALJ's

---

[2] This medical appointment was a consultative medical appointment. It is therefore not considered as contributing towards the frequency of Plaintiff's medical treatment.

decision adequately explain why the evidence should be rejected." *Dennis*, 2023 U.S. App. LEXIS 8976, at *14. Specifically, the Fourth Circuit noted that

> Nowhere in the denial did the ALJ address: (1) the frequency of Dennis' medical treatment, (2) how the frequency of Dennis' medical treatment would impact absenteeism, or (3) how Dennis' frequent medical treatment would impact the VE's testimony that missing more than 7 to 10 days per year "would be subject to firing."

*Id.*

Defendant contends that Plaintiff's argument should be rejected "because medical appointments by themselves are insufficient to establish disability because of absenteeism." [DE-10] at 12. Defendant cites the Eleventh Circuit's findings that "medical appointments are not an 'appropriate consideration for assessing [a claimant's RFC] because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments.'" [DE-10] at 12 (quoting *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017)). This out of Circuit authority does not overcome the clear dictates of *Dennis.* Similarly, the other authorities that Defendant cites in support of its position are either out of Circuit, *see Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. July 11, 2018); *Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000); *Baker v. Berryhill*, No. CIV-17-353-BMJ, 2018 WL 1096868, at *4 (W.D. Okla. Feb. 28, 2018), or predate the 4th Circuit's opinion in *Dennis*, 2023 U.S. App. LEXIS 8976, *see Hickey v. Berryhill*, No. ADC-16-3524, 2017 WL 4023095, at *4 (D. Md. Sept. 12, 2017); *Broom v. Colvin*, No. 5:15-CV-47-BO, 2016 WL 397629, at *1 (E.D.N.C. Feb. 1, 2016). None of these authorities supersede the Fourth Circuit's holding in *Dennis* that when confronted with a "history of frequent and extensive medical visits[, suggestive of work-preclusive absenteeism based on the VE's testimony] . . . the ALJ must discuss the record evidence regarding the frequency of [the claimant's] need for medical treatment and how [the claimant's] absenteeism

affects her ability to work." *Dennis*, 2023 U.S. App. LEXIS 8976, at \*1, \*15.  The undersigned therefore RECOMMENDS that the court REMAND on this issue.

To be clear, the undersigned expresses no opinion as to whether Plaintiff does or does not require additional limitations based on her absenteeism or otherwise.  The undersigned only seeks to ensure that the ALJ properly considers the relevant evidence and fully explains her decisions, so as to permit meaningful review by the court, if necessary.  On remand, the ALJ should discuss the record evidence regarding the frequency of Plaintiff's need for medical treatment and how Plaintiff's absenteeism affects her ability to work.  The ALJ should make findings and provide sufficient explanation in order to permit meaningful judicial review for substantial evidence, if necessary.

### 2. Absenteeism due to anxiety

As noted above, Plaintiff argues that her "paralyz[ing]" anxiety would also likely cause absences from work multiple times a month.  Pl.'s Brief [DE-8] at 18.

In her decision, the ALJ noted Plaintiff's testimony that "[s]ome mornings [claimant] would sit in her car, almost paralyzed by the fear she would do something wrong that day and not wanting to go inside."  Tr. 16.  The ALJ also considered Plaintiff's testimony that "[s]ometimes [claimant] would call in sick because of the anxiety, about 2-3 times per month."  *Id.*  Yet the ALJ found that Plaintiff "has been prescribed medication appropriate for her established impairments" and that "the record does not suggest that she fails to receive significant relief of symptoms with the use of medication."  Tr. 19.  The ALJ specifically highlighted that on "November 2, 2021, [Plaintiff] was noted to be doing well on Xanax and wanted a refill."  Tr. 17.  The ALJ concluded the "medical evidence of record does not support being off task or absent excessively due to

14

symptoms." *Id.*

As the undersigned has recommended remand for the ALJ to consider Plaintiff's absenteeism related to the frequency of her medical appointments, the undersigned need not determine whether this theory of absenteeism would provide an independent basis for remand. However, on remand, the Commissioner should consider Plaintiff's argument here (Pl.'s brief. [DE-8] at 17-19) and should ensure that her findings are supported by substantial evidence. It is, of course, up to the Commissioner to determine what weight to give all evidence. On remand, the Commissioner should make findings and provide sufficient explanation in order to permit meaningful judicial review for substantial evidence, if necessary

## C.   **Moderate noise environment limitation**

Plaintiff argues that the ALJ erred in not adequately explaining why the RFC limited Plaintiff to a "moderate" noise environment rather than a "quiet" noise environment. Pl.'s Brief [DE-8] at 19. Plaintiff points to her testimony that she suffers from tinnitus (*id.* (citing Tr. 63-65)), and, in particular, that her tinnitus is very loud even in quiet environments like a courtroom. (*id.* (citing Tr. 66)). Plaintiff argues that the "ALJ's failure to articulate how she arrived at an RFC with an environmental limitation for 'moderate' noise instead of 'quiet' noise precludes meaningful review. *Id.* at 20. In support, Plaintiff cites *Scott M. v. Saul* as an example where remand was necessary because the ALJ did not identify specific evidence supporting a moderate noise environment limitation. *Id.* at 20 (citing No. 6:18-cv-1801-SI, 2019 U.S. Dist. LEXIS 203853 (D. Or. Nov. 25, 2019)).

Defendant argues that "there was no error in the ALJ's consideration of the totality of the evidence and finding an RFC that included a maximum 'moderate' noise level." Def.'s Brief [DE-

15

10] (citing Tr. 15).

At the administrative hearing, Plaintiff alleged debilitating symptoms from her tinnitus. Tr. 63-64. Plaintiff explained that the louder the noises around her, the louder she perceives her tinnitus, and "it can get loud enough where I can't hear people or concentrate." Tr. 64. Plaintiff testified that she avoids going places like restaurants as it is "difficult, . . . because between all of that, the noise there, the people talking, my ears get louder." Tr. 65.

The VE testified that although the jobs the VE cited for someone with Plaintiff's RFC and other relevant characteristics were at the moderate noise intensity level, the VE would assess them to represent "a fairly quiet environment considered there's not going to be moving or active machinery [or assembly lines]." Tr. 82.

In her decision, the ALJ discussed Plaintiff's reports that she "has physical issues, including tinnitus and sinus symptoms that cause ringing in her ears, headaches, and interference with her vision." Tr. 16. She notes that Plaintiff "said it can get loud enough that she can't concentrate or hearing [sic] other people talking" and "[i]t interferes with her sleep; it gets louder as ambient noise gets louder." *Id.* The ALJ considered that "[i]n October of 2021 [Plaintiff] saw her primary care physician with complaint of . . . ringing in both ears" and "[s]he was diagnosed with tinnitus." Tr. 17. The ALJ evaluated records from an appointment with Dr. Farmer indicating that "[Plaintiff] has developed tinnitus that is 'very distressing' and causes significant increase in anxiety, poor balance, and headaches" and that "[Plaintiff] stated she was applying for disability due to anxiety and tinnitus." Tr. 17-18.

The ALJ summarized medical evidence, which provided that:

Audiological testing in July of 2022 noted mild sloping to moderately severe sensorineural hearing loss in the right ear and normal sensitivity up to 3000hz

> sloping to mild to moderate sensorineural hearing loss in the left ear. Word recognition was excellent bilaterally. It was noted that the claimant's tinnitus started in September of 2021 and was bilateral, generally high pitched, very annoying, and intrusive. She had a history of TMJ pin with arthralgia, audible cracking and grinding in jaw. She did not have vertigo and her hearing seemed stable.

Tr. 18.

The ALJ notes that in an August 2022 mental status examination, "[Plaintiff's] anxiety was noted to be associated with her tinnitus." *Id.* The ALJ explains "[claimant] would be able to perform light work with . . . limitations in environmental factors, such as no more than moderate noise to limit tinnitus and adapt to mild hearing loss." Tr. 19. The ALJ also notes the opinion of the State Agency physician at the reconsideration determination level that Plaintiff has "[s]ome limitation in hearing" and "she should avoid concentrated exposure to noise, vibration, pulmonary irritant, and hazards." Tr. 19-20. The ALJ found "the record as a whole is supportive of greater restrictions as set forth in the [RFC]." Tr. 20.

Another district court in this circuit found that an ALJ frustrates meaningful review when she "cursorily [walks] through some of the medical evidence" regarding noise limitations and then skips to a conclusion without including any reasoning. *See Mary Lou B. v. Comm'r, SSA*, 2020 U.S. Dist. LEXIS 15631, at *13-14 (D. Md. Jan. 29, 2020); *cf. also Fernandez v. Dudek*, No. 1:23-cv-24563-LFL, 2025 U.S. Dist. LEXIS 60736, at *23-24 (S.D. Fla. Mar. 31, 2025) (remanding where the ALJ's decision "cites a sparse summary of Plaintiff's medical record to support an auditory restriction, without any explanation for how the ALJ reached its determination"); *Scott M.*, 2019 U.S. Dist. LEXIS 203853, at *20-21 (remanding where the ALJ "did not identify any specific evidence supporting the moderate noise restriction in his written opinion" and incorrectly noted there were no hearing tests in the record).

17

Plaintiff expressly testified that based on her tinnitus, she avoids restaurants and environments with similar noise levels. Tr. 65. The Department of Labor's Selected Characteristics of Occupations ("SCO") categorizes noise intensity for jobs into five levels: "Level 1 - very quiet; Level 2 - quiet; Level 3 - moderate; Level 4 - loud; Level 5 - very loud." *See* U.S. Dep't of Labor, Selected Characteristic of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D-2. Noise Intensity Level (1993). The SCO gives examples of work environments with "moderate" noise, which includes: "fast food restaurant at off-hours." *Id.*

Here, the ALJ fails to mention plaintiff's testimony that she would struggle with the noise level of a restaurant, let alone reconcile this fact with an RFC that only limits Plaintiff to work environments with a "moderate" noise level. Accordingly, it is unclear whether the ALJ even considered this piece of evidence. The Fourth Circuit has held that "[t]he ALJ's 'assessment must . . .' be 'based on all of the relevant evidence in the case record.'" *Rogers v. Kijakazi*, 62 F.4th 872, 880 (4th Cir. 2023) (citing Social Security Ruling No. 96-8p, 61 Fed. Reg. 34,475-76 (July 2, 1996)). "Because we are left to guess about how the ALJ arrived at [her] conclusions," *Mascio*, 780 F.3d at 637, the undersigned RECOMMENDS that this matter be REMANDED on this issue.

## D.    Evaluation of Dr. Farmer's opinion.

Plaintiff contends that "[t]he ALJ erred in her analysis of Dr. Farmer's opinion." Pl.'s Brief [DE-8] at 20. Specifically, Plaintiff argues that the ALJ improperly "discounted Dr. Farmer's opinion that [Plaintiff's] ability to tolerate stress and pressure associated with day-to-day work activity is impaired, incorrectly suggesting that this opinion was not stated in vocationally relevant terms." *Id.* Plaintiff asserts that "there is no requirement in the regulations that an opinion contain specific vocationally relevant limitations." *Id.* Plaintiff cites *King v. Califano*, in support of the

principle that "[e]ven if legitimate reasons exist for rejecting or discounting certain evidence, the Secretary cannot do so . . . for the wrong reason." Pl.'s Brief [DE-8] at 21 (quoting 615 F.2d 1018, 1020 (4th Cir. 1980)).

Defendant counters that "[w]hile Plaintiff asserts there is no 'requirement' in the regulations that an opinion contain specifically vocationally relevant limitations, the ALJ has fact-finding leeway to discount an opinion because it is not helpful, *i.e.*, not valuable or persuasive." Def.'s Brief [DE-10] at 16.

Dr. Farmer found that Plaintiff was "impaired" in "[h]er ability to tolerate stress and pressure associated with day-to-day work activity." Tr. 516. The ALJ explained that this opinion "is not adequately defined in vocationally relevant terms to help determine the extent to which this area is limited." Tr. 20. Plaintiff does not point to any limitation which Dr. Farmer's opinion would demand, but which the ALJ did not provide. The ALJ accommodated Plaintiff's anxiety by limiting Plaintiff to "simple tasks, limited interaction w/coworkers, and occasional changes to simple work." Tr. 19. Because Dr. Farmer discusses Plaintiff's stress and pressure-related "impair[ment]" in such vague terms, Plaintiff cannot show that the ALJ's proposed limitations would not accommodate such an impairment.

Accordingly, the undersigned finds (i) that the ALJ did not err by discounting the helpfulness of Dr. Farmer's opinion on this matter and (ii) therefore recommends that remand is not necessary on this matter.

## VII. CONCLUSION

For the above reasons, IT IS RECOMMENDED that Plaintiff's Brief [DE-8] be ALLOWED, Defendant's Brief [DE-10] be DENIED, and the final decision of the Commissioner

19

be REMANDED for further proceedings consistent with this Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 21, 2025**, to file written objections to this Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 14 days from the filing of the objections or August 29, 2025**.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir.**

20

**1985).**

Submitted, this 7th day of August 2025.

_____
Brian S. Meyers
United States Magistrate Judge